JAMES M. OWENS JR., as Tax Assessor of Palm Beach County, Florida, and Statson O. Sproul, as Tax Collector of Palm Beach County, Florida, v. EMILY BEDFORD FOSDICK, joined by her husband PAULDING FOSDICK.

13 So. (2nd) 700                                      January Term, 1943
May 18, 1943                                                    En Banc
Rehearing Denied June 15, 1943

*Casey, Walton, Atkins & Carson, Miller Walton, S. O. Carson, Keen & Allen, J. Velma Keen* and *A. Frank O'Kelley, Jr.,* for petitioners.

*Jerome D. Gedney,* for respondents.

*Joseph F. Gunster,* as amicus curiae.

SEBRING, J.:

This case is before the Court on a petition for interlocutory certiorari to review an order of the Circuit Court of Palm Beach County denying a motion to dismiss a bill of complaint filed by the respondent, Emily Bedford Fosdick, joined by her husband, Paulding Fosdick.

The suit is one essentially for the determination of the validity of an intangible personal property tax assessed pursuant to the Intangible Personal Property Tax Law of F.S.A. Sec. 199.01 et seq. The statute in question defines intangible personal property as "all personal property which is not in itself intrinsically valuable, but which derives its chief value from that which it represents." Sec. 199.01 F.S. 1941, F.S.A. Sec. 199.01. Among the intangible personal property which the statute says shall be taxed is "the beneficial interest of residents of Florida in trust estates of all kinds when the trustee resides outside of the State of Florida, or if the

trustee is a corporation and has its principal places of business outside of the State of Florida, . . ." Sec. 199.02 F.S. 1941, F.S.A. Sec. 199.02. It is required that such intangible personal property shall be assessed at its full cash value. Sec. 199.05 F.S. 1941, F.S.A. Sec. 199.05. The Comptroller of the State is empowered to make such rules and regulations as may be necessary to carry out and execute the intent of the statute. Sec. 199.03 F.S. 1941, F.S.A. Sec. 199.03. The challenged tax was imposed on Emily Bedford Fosdick, as one of the beneficiaries of certain foreign trusts, under authority of the statute.

From the bill of complaint in the case it appears that the respondent, Emily Bedford Fosdick, is a resident of Florida. As one of the beneficiaries, she is entitled to receive a portion of the net income from eight separate trust estates for life. The trusts were created outside of the State. The settlors were nonresidents. The legal title to all assets of the trust, consisting of stocks and bonds, is held by a corporate trustee having its principal place of business in New York. The trusts are irrevocable. The absolute management and control of the trust funds is in the corporate trustee. Mrs. Fosdick has no incident of ownership in the corpus of the estate, such as a power of revocation, or power of appointment by will, or otherwise. Seven of the trust instruments contain limited spendthrift clauses. It is an express condition of the trust indentures that Emily Bedford Fosdick shall receive her proportionate share of net income, only if she be living at the time of distribution. At her death, designated remaindermen take principal and income.

Emily Bedford Fosdick received her first distribution of income under the trust instruments, during the year 1941. The tax in question was assessed on January 1, 1942, the sole property right taxed being *the privilege of receiving income for life* from the trust fund. In accordance with rules promulgated by the State Comptroller, the present worth of the right or privilege was determined by the process of capitalizing the net income which Mrs. Fosdick had received for 1941, according to her life expectancy. The tax for 1942 was laid on the capital sum thus found.

The tax is objected to on the ground that it amounts to taxation of income, contrary to Section 11 of Article IX of the Constitution of Florida, which provides that "No tax upon inheritances or upon the income of residents or citizens of the State shall be levied by the State of Florida, or under its authority, . . ."

The respondent, Emily Bedford Fosdick, maintains that a tax on the present worth of the property right to receive future income amounts, in practical effect, to a tax on income itself, which is prohibited by the Constitutional limitation on the taxing power. The taxing authorities say that the tax is not one laid on income, but *on the privilege of receiving income,* which they submit, is a very valuable species of property distinct from income itself. The question, therefore, is whether under the facts of this case the taxation of the beneficiary's *right to receive net income for life* from the trusts in question can be distinguished from taxation of the income, which is prohibited by the Florida Constitution.

The issue being thus clearly defined, it becomes our duty to ascertain for ourselves upon what the tax is laid, keeping in mind that the nature of the tax must be determined by its operation rather than by its terminology. Education Films Corp. v. Ward, 282 U. S. 379, 51 S. Ct. 170, 75 L. Ed. 400, 71 A.L.R. 1226.

The tax assessor leans heavily on Wood v. Ford, 148 Fla. 66, 3 So. (2nd) 490, as upholding the validity of the tax on the property right or interest here involved. At first reading the cited case seems to support the contention—in principle, at least. We think, however, that closer perusal will reveal a clear distinction between that case and the one before us now.

In the Ford case, *supra,* this Court had occasion to consider whether or not the State of Florida had the power to tax the property interest of a resident cestui que trust in and to certain personal property held in trust in New York for his sole use and benefit, as against the contention that such a levy would impose the burden on the beneficiary of paying taxes upon the trust res in which he had no property interest. The Court rejected the contention that the laying

of the tax would have the result suggested, pointing out that under the terms of the trust instrument the cestui que trust had such a present, vested equitable life estate, right or interest in the trust fund—separate and distinct from the trust fund itself—as amounted to intangible personal property under the intangible personal property tax law then in force and effect in the State; and that it was this right, estate, or interest that was being taxed. The proposition that the tax was violative of Section 11, Article IX of the Florida Constitution forbidding taxation of incomes was not raised, and, of course, was not decided.

The deed of trust in the Ford case was executed in New York State. The donor and the trustee were domiciled there. The trust properties were bonds and other securities, which, presumably, were negotiable. The donor reserved no rights or interests with reference to the trust property. The trust was irrevocable. The inherent power of the cestui que trust to alienate his interest in the trust fund was not restrained. The trustee had only the naked legal title, and was charged wtih the duty of administering the fund for the sole benefit, support, and maintenance of the cestui que trust during his lifetime. The net income was payable to the cestui que trust at stated intervals, as he might request. In the event that the net income proved to be, or became, insufficient or inadequate for the suitable support of the beneficiary, the trustee was authorized to pay out such part of the principal as might be necessary therefor. The cestui que trust was given a general testamentary power of appointment over the principal and income.

It is evident that the beneficiary in Wood v. Ford had a very valuable present property right in the trust fund that was immeasurably more than the interest here involved. His interest was something more than a mere naked right to receive income, and much more than a chose in action, or demand, that it be paid. His was a fixed lawful right to the net income for life, with a *present* right to alienate it, there being no restraints on alienation. He had the reasonable expectation that if such net income proved insufficient to maintain him adequately in accordance with his station in

society, resort might be had to the principal of the trust for such proper support. Moreover, the general power to appoint by will—if he saw fit to exercise it—gave the cestui que trust the absolute right to determine who should take title to the trust assets, after the trust had become terminated.

Because of the rights, powers, interests and privileges growing out of the trust instrument, it was held that the beneficiary in the Ford case had such a present vested beneficial interest or estate in the corpus of the trust property as could be taxed under the intangible personal property tax laws of Florida. Chapter 15789, Acts of 1931, Ex. Sess.

Compare the nature of these rights, powers, and interests with what Mrs. Fosdick has under the trust instruments in the present case. What single incident of ownership is there in the trust that can be logically disassociated from the income itself?

All that she has is the prospect or expectation of receiving income in the future, if she be living at the time of the distribution of income, which, practically speaking, amounts to nothing unless and until the income is received. In no event may she have a claim or demand against the trust estate, unless the securities of the estate yield an income. Upon death, the income is no longer a claim against the trustee but passes with the corpus to designated remaindermen. Meanwhile, if the cestui que trust attempts to assign, sell, or encumber her prospects, or permits or suffers the same to be taken by a receiver, trustee, or representative of creditors in any manner, or if legal proceedings are instituted to enforce claims of creditors against the income, or if the beneficiary is adjudged a bankrupt, a forfeiture of all rights to income results under the spendthrift clauses contained in seven of the trust instruments; until the rights, claims and demands of creditors are cancelled, terminated, or otherwise extinguished. The cestui que trust has no power of appointment of the corpus, no future estate in remainder, and no present interest in the res aside from a right in equity to compel the performance of the trust. In short, so far as the trust res is concerned there never has been, nor never can be, a time when the respondent, Emily Bedford Fosdick, could, or

can, assert any right of possession, control, or ownership over the securities.

Under these circumstances it appears to us that if the cestui que trust has a vested beneficial interest, or estate at all, it is more in the nature of a beneficial interest or estate in income than in the trust res itself. In our view, a tax on such interest, or estate, would so closely partake of a tax on income as to be tantamount to a tax on income; and hence violative of the spirit and intent of section 11 of Article IX of the Constitution of Florida. Dawson v. Kentucky Distilleries Co., 255 U. S. 288, 41 S. Ct. 272, 65 L. Ed. 638; Thompson v. Kreutzer, 112 Miss. 165, 72 So. 891; Jensen v. Henneford, 185 Wash. 209, 53 P. (2nd) 607; 26 R.C.L. 236, Sec. 209.

The people of the State of Florida have declared that there shall be no tax on incomes levied by the State, or under its authority. Const. Fla. Art. IX, Sec. 11. This Section is a definite positive proscription against such taxation by the Legislature. It operates as a limitation upon the power to tax all real and personal property owned by citizens and residents of the State, which otherwise is recognized under Section 1 of Article IX of the Constitution. If in its practical application, therefore, a tax falls upon that which is prohibited by this Section of the Constitution of the State it can not be upheld, no matter in what terminology the taxing statute is couched, or what the Legislature has declared the tax to be. To be guided by any other view is to concede that what may not be done directly because of constitutional restrictions, may be done indirectly by legislative means accomplishing the same result, the Constitution notwithstanding. Fairbanks v. U. S., 181 U. S. 283, 21 S. Ct. 648, 45 L. Ed. 862. Constitutional prohibitions may not thus be so lightly evaded or circumvented. Their mandates are imperative, and they must be so construed as to give full force and effect to their manifest purpose. City of Jacksonville v. Continental Can Company, 113 Fla. 168, 151 So. 488.

Construed in such manner, with appropriate emphasis being placed upon that which we think the people of Florida sought to accomplish when they wrote the income exemption

clause into our Constitution in 1924, it is clear to us that the tax in question, in its application to the facts of the present case, was illegally imposed and is violative of Section 11 of Article IX of the Constitution of Florida.

The case of Commonwealth ex rel. Martin v. Sutcliffe, 283 Ky. 274, 140 S. W. (2nd) 1028, 1032, which has been cited by the petitioners, has ben carefully considered. The facts are on all-fours with the facts of the case at bar; although the decision rested on different grounds, the State of Kentucky having no constitutional prohibition against the taxation of incomes. As we understand the facts of that case, the taxing authorities, after having collected an income tax, levied a property tax upon "the right to receive income." The Court of Appeals of Kentucky sustained the tax, as against the challenge that the levy was violative of the Fourteenth Amendment to the Federal Constitution.

If we should accept the decision of the Sutcliffe case as controlling, the case now before this Court would necessarily terminate in favor of the petitioners. But we do not feel free to follow the Kentucky decision, in the fact of the peculiarly forceful taxing limitation contained in our own Constitution.

From what we have said, it follows that the petition for writ of certiorari should be denied and the cause remanded for further proceedings not inconsistent with this opinion.

It is so ordered.

BUFORD, C. J., TERRELL, BROWN, CHAPMAN, THOMAS, and ADAMS, JJ., concur.